Argued and submitted April 11, reversed and remanded June 1, 2005

## Cheryl BAUGHMAN,
*Appellant,*

*v.*

## Toni PINA,
*Respondent.*

## 0108-07994; A123696

113 P3d 459

C. Robert Steringer argued the cause for appellant. With him on the briefs were Frank A. Moscato and Harrang Long Gary Rudnick, P.C.

Todd S. Baran argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rasmussen, Judge pro tempore.

BREWER, C. J.

## BREWER, C. J.

This negligence action arises out of an automobile accident between plaintiff and defendant. The trial court directed a verdict for defendant on the ground that plaintiff did not produce sufficient evidence that defendant's negligence caused her injuries. We review to determine whether there is expert testimony from which a rational juror could find that there is a reasonable medical probability that defendant's negligence caused plaintiff's injuries. *See Chouinard v. Health Ventures*, 179 Or App 507, 512, 39 P3d 951 (2002) (when causation involves a complex medical question, evidence is insufficient to go to the jury without expert testimony that there is a reasonable medical probability of a causal connection). We conclude that plaintiff's expert testimony regarding causation was sufficient to present a triable issue of fact and, therefore, reverse and remand.

At trial, plaintiff adduced the following testimony by her chiropractor regarding causation:

"Q  Now, do you have a medical opinion on the causation of [plaintiff's] neck injury? You testified something about the whiplash. But do you have a specific causation of the condition you treated her for when you first started seeing her on January 27 of 2000?

"A  Yeah. It is my opinion that the condition that I treated her for was solely a result of the accident that she had two days prior to coming into my office."

At the close of plaintiff's case, defendant moved for a directed verdict, arguing that the testimony just quoted was insufficient to establish causation under the reasonable medical probability standard. The trial court agreed and granted the motion. On appeal, plaintiff argues that her expert was not required to utter the particular words "reasonable medical probability" to establish the element of causation and that his medical opinion that plaintiff's injury was "solely the result" of the accident was sufficient. Defendant agrees that particular words were not necessary but argues that the testimony was insufficient because it did not disclose the reasons for the expert's opinion. In defendant's view, "[t]he

reasonable medical probability standard does not exist simply to ensure that a medical expert testifies; that standard exists to ensure that the expert's opinion is based on generally accepted medical science and diagnostic practices."

■ We review the grant of a directed verdict for any evidence in the record from which a rational juror could find for the plaintiff on every element of her claim. *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 272, 40 P3d 506 (2002). When the element of causation involves a complex medical question, as a matter of law, no rational juror can find that a plaintiff has established causation unless the plaintiff has presented expert testimony that there is a reasonable medical probability that the alleged negligence caused the plaintiff's injuries. *See Uris v. Compensation Department*, 247 Or 420, 424, 427 P2d 753 (1967) ("[W]here injuries complained of are of such character as to require skilled and professional persons to determine the cause and extent thereof, the question is one of science and must necessarily be determined by testimony of skilled, professional persons." (Internal quotation marks omitted.)); *see also Chouinard*, 179 Or App at 512. The rule prevents jurors from speculating about causation in cases where that determination requires expertise beyond the knowledge and experience of an ordinary lay person. *Howerton v. Pfaff*, 246 Or 341, 347-48, 425 P2d 533 (1967).

Oregon cases discussing the sufficiency of expert opinion testimony about a "reasonable medical probability" of causation have primarily focused on (1) whether such expert testimony is required, *see Chouinard*, 179 Or App at 513 (whether a brain tumor caused the plaintiff's headaches was a sufficiently complex medical question to require expert testimony); (2) whether the expert is qualified in a field that is recognized as scientifically valid, *see State v. O'Key*, 321 Or 285, 899 P2d 663 (1995) (laying out multifactor analysis to determine scientific validity); or (3) whether the expert testified that causation was probable or merely possible, *see Joshi v. Providence Health System*, 198 Or App 534, 545, 108 P3d 1195 (2005) (testimony that there was a 30 percent chance that defendant's alleged negligence caused injury was insufficient to allow issue to go to the jury). Those questions are not presented here. Plaintiff essentially concedes that the question of causation in this case was sufficiently complex to

require an expert opinion. Defendant, for her part, did not challenge the witness's qualifications as a chiropractor or contest the scientific validity of chiropractic medicine. In addition, defendant concedes that the expert's testimony that plaintiff's injuries were "solely the result" of her accident with defendant was, in effect, an opinion that causation was probable, not merely possible.

Instead, defendant contends that the expert's testimony was insufficient to establish causation because the expert did not explain the scientific principles underlying that opinion. In defendant's view, no rational juror could find, based solely on the bare opinion of a qualified expert, that the accident at issue here caused plaintiff's injuries. Defendant argues that, without an explanation of *why* the expert believed that the accident caused the injury, the jury could only speculate about whether he arrived at his opinion by applying scientifically valid principles. Defendant asserts that *Hutchison v. Aetna Life Insurance Co.*, 182 Or 639, 189 P2d 586 (1948), supports her position. She argues that the Supreme Court in *Hutchison* determined that an expert opinion lacked probative value because it was not accompanied by an explanation of the scientific principles underlying it. We disagree with that characterization of *Hutchison*.

In that case—an action to enforce an insurance policy—the issue was whether the death of the plaintiff's husband resulted from an accidental injury covered by the defendant's policy. The plaintiff contended that the death was the eventual result of an accident that her husband had had at work several months earlier. At the conclusion of a hypothetical question, the plaintiff's attorney asked an expert witness, "Assuming those to be the facts, Doctor, would you say that the accident was the probable cause of his death?" *Id.* at 645. The witness answered, "Well, from a medical and surgical standpoint, it strikes me that this whole thing which was the active cause of this was an accident which the man had." *Id.* The Supreme Court concluded, and the plaintiff conceded, that the witness's testimony was so indefinite and confusing as to be "wholly devoid of probative value." *Id.* at 649. As a result, the court did not consider the testimony in determining whether there was sufficient evidence to support a verdict for the plaintiff. Although the court

did not elaborate on its reasoning, it appeared to conclude that the challenged testimony—couched in vague terms such as "it strikes me," "active cause," and "an accident"—failed to convey a coherent opinion that the accident probably caused the decedent's death. The court did not, however, adopt a categorical rule that an expert must explain the scientific basis for his or her opinion in order for the opinion to qualify as evidence sufficient to withstand a motion for directed verdict on the issue of causation. Defendant has cited no authority, and we have found none, that imposes such a requirement. We decline to impose one here.

In this case, plaintiff's expert testified about his medical qualifications on direct examination. Plaintiff's counsel asked whether the expert had a "medical" opinion regarding causation, and the expert answered that he did. He then stated his opinion "that the condition that I treated her for was solely a result of the accident that she had two days prior to coming into my office." From that evidence, a rational juror could infer that the expert had a scientifically valid basis for his opinion and was not simply speculating about causation.[1] The expert's failure to explain how he arrived at his opinion could result in the jury giving the opinion less weight than it otherwise might, but that omission is not grounds for a directed verdict. *Cf. Chance v. Alexander*, 255 Or 136, 139, 465 P2d 226 (1970) ("The general rule is that the reasoning and facts upon which an expert expresses his opinion goes only to its weight."); *see also Lawrence v. Underwood*, 81 Or App 533, 540, 726 P2d 1189 (1986) (weaknesses in analysis and data go to weight, not admissibility).

In sum, we conclude that plaintiff's expert's testimony that plaintiff's injuries were solely the result of the accident was sufficient evidence of causation to create an

---

[1] If defendant was concerned that plaintiff was offering an unfounded opinion, she could have requested an OEC 104 hearing for the court to determine whether the expert's opinion was based on knowledge that is considered scientifically valid under the multifactor analysis described in *O'Key*. *See* Laird C. Kirkpatrick, *Oregon Evidence* § 702.04, Art VII-35 (4th ed 2002) (Scientific validity is a preliminary question for the court to resolve in an OEC 104 hearing.).

issue of fact for the jury. It follows that the trial court erred in directing a verdict for defendant.

Reversed and remanded.