Argued and submitted December 13, 2019, reversed and remanded
March 17, 2021

Sergey SOVA,
*Plaintiff-Appellant,*

*v.*

VITAL AUTO BROKERS, LLC,
an Oregon limited liability company,
*Defendant-Respondent.*

VITAL AUTO BROKERS, LLC,
an Oregon limited liability company,
*Third Party Plaintiff,*

*v.*

Sergey LUPEKHA,
*Third Party Defendant.*

Multnomah County Circuit Court
16CV21603; A168331

483 P3d 1204

Plaintiff appeals from a judgment for defendant, a used car dealership, after trial to the court on plaintiff's claims and defendant's counterclaims of conversion and fraud relating to a truck. Plaintiff contends that the trial court erred in determining that he is not the lawful owner of the truck and in granting judgment to defendant. *Held*: The electronic record of the Department of Transportation Motor Vehicles Division showing that plaintiff is the holder of lawful title to the truck is *prima facie* evidence of ownership. ORS 802.240. That evidence, along with unrebutted evidence that plaintiff purchased the truck in good faith and at arm's length, require the conclusion that plaintiff was a bona fide purchaser of the truck and entitled to possession. The trial court therefore erred in granting judgment to defendant on plaintiff's claims and defendant's counterclaims, and it erred in declaring that defendant is entitled to title to and possession of the truck.

Reversed and remanded.

Kelly Skye, Judge.

Margaret H. Leek Leiberan argued the cause for appellant. Also on the brief were Jensen & Leiberan.

No appearance for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

ARMSTRONG, P. J.

Reversed and remanded.

**ARMSTRONG, P. J.**

Plaintiff Sergey Sova appeals from a judgment for defendant Vital Auto Brokers, LLC, a used car dealership, after trial to the court on plaintiff's claims of conversion and fraud relating to a truck and defendant's counterclaims for conversion and fraud relating to the same truck. The only issue on appeal is the lawful ownership of the truck. Although, generally, ownership of a vehicle is a question of fact, *Fisher v. Pippin*, 40 Or App 421, 423, 595 P2d 513, *rev den*, 287 Or 507 (1979), we agree with plaintiff that, on this record, no reasonable trier of fact could find that plaintiff was not the owner of the truck.

From plaintiff's perspective, the facts surrounding his acquisition and ownership of the truck are straightforward. Plaintiff testified that he was looking for a new truck for his metal-fabrication business. Plaintiff testified that he had seen an acquaintance, Sergey Lupekha, driving a 2011 Dodge Ram truck and believed that Lupekha was using the truck as his personal or business vehicle. Plaintiff learned that Lupekha was willing to sell him the truck.

On December 4, 2015, plaintiff and Lupekha together went to the Oregon Department of Transportation Motor Vehicles Division (DMV), where plaintiff obtained a record from DMV's database showing that Lupekha had free and clear title to the truck. Lupekha told plaintiff that he did not have the truck's title with him, but he applied for and obtained a replacement title. Plaintiff testified that he had no reason to doubt or question Lupekha's ownership of the truck and agreed to purchase it. He paid Lupekha $9,800 in cash and a trade-in vehicle valued at $27,000. Lupekha transferred title to plaintiff, and plaintiff filed the title with DMV and applied for and obtained registration and plates for the truck.[1] Plaintiff testified that he insured the truck and used it in his business for approximately six months, until May 2016, when defendant had it towed from plaintiff's business parking lot.

The facts were more complicated from defendant's perspective: Defendant's owners testified that the dealership

---

[1] The DMV title documents were admitted at trial, and their existence is undisputed.

had worked for years with Lupekha, who would find used vehicles and sell them to defendant for resale. In June 2014, Lupekha sold defendant a 2011 Dodge Ram truck for $34,500, cash—the same vehicle that Lupekha later sold to plaintiff. Lupekha held salvage title to the vehicle and released the title to defendant. But defendant's owners testified that defendant did not apply to DMV to have the title recorded because, as a dealer, it was not required to do that.

The vehicle could not pass DEQ inspection and needed repairs. Lupekha agreed to take care of it and tried several times without success to have the truck repaired. In November 2015, Lupekha took the truck from defendant's lot, ostensibly for further repairs, but did not return it. As noted, on December 23, 2015, Lupekha applied for and obtained a replacement title and sold the truck to plaintiff. DMV documents show that, between the date of Lupekha's sale of the truck to defendant in June 2014 and his sale of the truck to plaintiff in December 2015, the truck's odometer reading increased by about 8,000 miles. Defendant's witnesses testified that the additional mileage was not attributable to defendant.

After Lupekha took the Dodge Ram from defendant's lot in November 2015, he did not return it and he could not be located. Defendant's owners became concerned and, on December 23, 2015, they applied for title to the truck. Defendant hired investigators who, in May 2016, found the truck at plaintiff's place of business and had it towed from plaintiff's lot.

Plaintiff testified that he learned through surveillance video and telephone calls that defendant had arranged to have the truck towed. He contacted defendant, whose employees did not respond to plaintiff's demand for return of the truck. The police told plaintiff that they could not help plaintiff recover the truck, because defendant had title. Plaintiff then contacted DMV, which, through investigation, determined that defendant had been issued title through "an error in processing," and it "expelled" defendant's title.

Plaintiff then brought this action, alleging that he had purchased the truck for valuable consideration and was its sole owner, and that defendant had unlawfully

seized it. Plaintiff's complaint asserted claims for conversion and fraud and sought return of the truck and damages. Defendant answered that plaintiff had not purchased the truck in good faith and had wrongfully obtained title, and it asserted its own counterclaims of conversion and fraud.

At trial, plaintiff testified that he had no knowledge of Lupekha's relationship with defendant or his previous sale of the truck to defendant. Defendant's owners testified that they had no personal knowledge of a relationship between plaintiff and Lupekha. But defendant offered and the court received the testimony of a witness who acknowledged making statements that defendant's counsel read from a hand-written affidavit:

> "I acknowledge that Sergey Sova bought a truck owned by Gennadiy Vaio [defendant's owner/manager]. Knowingly bought the truck from Sergey Lupekha, knowing that Gennadiy owned the truck.

> "They thought—said it was funny to take advantage of Gennadiy Vaio. They—Sergey Sova and Sergey Lupekha. They both also agreed in front of me and the Washington Oregon cops—or the Washington or Oregon cops were too stupid to figure out what they did."

The witness testified that, although the signature on the affidavit was his, he had neither written nor previously read the statements in the affidavit, he had no first-hand knowledge of the facts contained in them, he had never spoken directly to Gennadiy, Sova, or Lupekha about the truck, and he had not overheard a conversation between plaintiff and Lupekha. He testified that the affidavit's statements were based only on things that he had heard from Lupekha's brother Yuri.[2] The trial court denied plaintiff's motion to exclude the affidavit statements as hearsay.

The trial court ruled from the bench that it was not persuaded that plaintiff had met his burden to show that

---

[2] The witness denied having first-hand knowledge of the contents of the statements. Rather, the statements were based on things he had heard:

> "I've heard—it's just—things that I know is from hearing. Like, I seen the truck. I asked Yuri whose truck it is. He said it's Gennadiy's. And then I've heard a story that it's been sold somehow. I don't know. I guess duplicate title was made or so, somehow, I don't know. I don't know the whole story. I just heard—or know that it's been Gennadiy's truck, and somehow it's been sold."

he was a bona fide purchaser of the truck.[3] The court ruled in favor of defendant on plaintiff's claims and defendant's counterclaims, and the judgment ordered that defendant "shall be entitled to free and clear title" to the truck.

On appeal, plaintiff assigns error to the trial court's determination that defendant had a "superior interest in the title" and is entitled to possession of the truck with no compensation to plaintiff. He argues that the trial court erred in determining that plaintiff had not met his burden to show that he is the owner of the truck, and we agree. A certificate of title of an automobile is *prima facie* evidence of ownership. ORS 802.240 provides:

> "(1)   In all actions, suits or criminal proceedings when the title to, or right of possession of, any vehicle is involved, the record of title, as it appears in the files and records of the Department of Transportation, is *prima facie* evidence of ownership or right to possession of the vehicle."

*See Valley Motor Co. v. Ralls*, 224 Or 290, 298, 355 P2d 1100 (1960) (same, citing *former* ORS 481.115, *repealed by* 1983 ch 338, § 978). DMV's record of plaintiff's title was *prima facie* evidence of his ownership of the truck in plaintiff's claims and defendant's counterclaims of conversion and fraud. Additionally, as to defendant's counterclaims, DMV's confirmation for plaintiff of Lupekha's unencumbered ownership of the truck, plaintiff's purchase of the truck for valuable consideration, and plaintiff's title of record with DMV are *prima facie* evidence that plaintiff was a *bona fide* purchaser. *See Gorzeman v. Thompson*, 162 Or App 84, 92, 986 P2d 29 (1999) (describing a bona fide purchaser as one who (1) bought in good faith, (2) paid valuable consideration, and (3) "filed first for record"). Thus, contrary to the trial court's

---

[3] The court ruled from the bench:

"[G]iven all of the evidence that I've reviewed, I—you know, I'm not convinced either way what happened here. I think that there's likely something more going on that I don't know. Given that the Plaintiff is the party with the burden of proof, I am not convinced that it's more likely than not that the Plaintiff was not on some type of notice that there was something going on here.

"*****

"I just feel like there's something else going on here, and I don't know what it is. And given that the Plaintiff is the only party with the burden, I can't find that it's more likely than not. So it's a defense verdict."

assumption, it was defendant's burden to rebut plaintiff's *prima facie* evidence that plaintiff was the rightful owner of the vehicle. *Brunk v. Horton*, 280 Or 239, 242, 570 P2d 382 (1977).

Defendant did not present any evidence that could rebut plaintiff's *prima facie* evidence of ownership by virtue of his possession of title and his acquisition of the vehicle as a bona fide purchaser. Rather, defendant has presented speculation through a third party's hearsay testimony that plaintiff might not have purchased the vehicle in good faith, because he might have been aware that Lupekha had previously sold the vehicle to defendant. That speculation is not legally sufficient to rebut plaintiff's *prima facie* evidence of his ownership. Defendant, not plaintiff, must bear the loss resulting from the carelessness that permitted Lupekha's wrongful conduct. *See South Seattle Auto Auction, Inc. v. Ladd*, 230 Or 350, 370 P2d 630 (1962) ("[W]here one of two innocent parties must suffer through the act or negligence of a third person, the loss should fall upon the one who, by his conduct, created the circumstances which enabled the third party to perpetrate the wrong."); *see also Valley Motor Co.*, 224 Or at 298 ("A purchaser of a vehicle who receives a properly indorsed certificate of title in circumstances which would not put an ordinary person on inquiry is protected when the owner is estopped to assert title because of misplaced trust in the wrongdoer.").

We conclude that the trial court erred in granting judgment to defendant on plaintiff's claims and defendant's counterclaims and erred in declaring that defendant is entitled to title to and possession of the Dodge Ram. The evidence in the record requires the conclusion that plaintiff is the owner of the Dodge Ram and is entitled to possession of the vehicle.[4]

Reversed and remanded.

---

[4] Plaintiff's contention on appeal is that the trial court erred in ruling that defendant is entitled to possession of the truck. In view of our disposition, we do not address plaintiff's additional contention that the trial court should not have received into evidence the statement from defendant's witness concerning the sale of the truck without defendant's knowledge.